**GENERAL ELECTRIC COMPANY and General Electric Technical Services Company, Inc., Plaintiffs,**

v.

**Siro CUGINI, Defendant.**

**Civ. No. 85–0302 (JAF).**

United States District Court, D. Puerto Rico.

July 1, 1986.

Ramon Lloveras Otero, Carlos A. Quilichini, San Juan, P.R., for plaintiffs.

José F. Sárraga, Hato Rey, P.R., for defendant.

## OPINION AND ORDER

FUSTE, District Judge.

Presently before the court is defendant's motion under Fed.R.Civ.P. 12 to dismiss plaintiffs' complaint for lack of federal diversity of citizenship jurisdiction. As the parties have submitted memoranda and affidavits, and the plaintiffs have submitted depositions in support of their positions, the motion will be treated as one for summary judgment under Fed.R.Civ.P. 56. Summary judgment is rendered if the material facts are undisputed and if defendant is entitled to judgment as a matter of law. *See generally* C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* Sec. 2725 at 75–112 (1983). This Court will examine the record in a light most favorable to the opposing party. *Hahn v. Sargeant,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976).

Plaintiffs seek to invoke federal jurisdiction based on diversity of citizenship. 28 U.S.C. Sec. 1332(a)(1) provides that the district court shall have jurisdiction over actions "between citizens of different states" when the amount in controversy exceeds $10,000.

The complaint, filed February 1, 1985, alleges that plaintiff General Electric Company (G.E.) is a citizen of New York, plaintiff General Electric Technical Services Company, Inc. (GETSCO) is a citizen of Delaware (its place of incorporation) and New York (its principal place of business), and that defendant is a resident of Puerto Rico.

Before the commencement of this action, the defendant has filed suit in Venezuela against G.E. and its subsidiaries GETSCO and General Electric de Venezuela (GEVENSA) to determine what benefits and monies he is entitled to under his employment contract. Plaintiffs in this action subse-

quently filed suit in Puerto Rico and Washington. The suit in Washington has been dismissed by stipulation of the parties.

Defendant claims that as a matter of fact, he is a United States citizen domiciled in Venezuela and, therefore, not a citizen of any state for diversity purposes.

### Factual Background

In 1952, defendant commenced to work for G.E. In 1955, he went to Venezuela to work for the Venezuelan subsidiary of G.E. and its successor GEVENSA. He acquired a Venezuelan identification card in 1958 (identifying him as a North American resident of Venezuela). He also obtained a Venezuelan driver's license.

For more than twenty-five years, he has maintained a bank account in Venezuela with a Venezuelan bank. He pays taxes to the Venezuelan government and receives monthly Venezuelan social security payments. He purchased a car in Venezuela, maintains insurance with a Venezuelan company, and has his car registered there. The defendant owns a 37–foot sailboat registered in Venezuela, with its home port in Catia La Mar, Venezuela. Defendant rents a mooring space there; he belongs to and owns shares in the Yacht Club at Catia La Mar.

In 1977, the defendant purchased a condominium in Humacao, Puerto Rico (Villa 211) and placed it with a leasing company to be leased to third parties. In 1979, the defendant expressed his desire to reside in Puerto Rico upon retirement. This was contained in a letter to a manager at GEVENSA. In 1980, he purchased an additional condominium (Harbor Side 1007) at Humacao, Puerto Rico. Harbor Side 1007 was also under a leasing agreement until October 1984 when the last lease expired.

In June 1984, the defendant sold his home in Caracas. Shortly thereafter, he retired from GEVENSA. Subsequently, he and his wife moved into a rented apartment and then aboard the sailboat. They also

stayed at an apartment (free of charge) in Caracas.

In August 1984, defendant opened a bank account in a Venezuelan branch of Banco Popular, a Puerto Rican bank. After the last lease expired on Harbor Side 1007, the Cugini's began repairing and renovating the condominium. In October 1984, most of the furnishings from their home were shipped to Puerto Rico. The rest were shipped to Washington, where the defendant's mother, daughters, and sister live. Many of Mrs. Cugini's relatives reside in Puerto Rico.

The defendant's wife had two charge accounts transferred from Venezuela and she purchased a car in Puerto Rico. She spent most of the next few months in Puerto Rico, staying at Harbor Side 1007 when she was not in Venezuela or Washington with her husband. The defendant joined her for brief periods, but spent most of his time in Venezuela, Washington, Miami or sailing to various ports in his boat. He has not brought the boat to Puerto Rico and he owns or rents no mooring spaces here.

In late 1984, defendant once again expressed his intention to reside in Puerto Rico upon retirement. On this occasion it was expressed to a rental agent for the condominium complex where Villa 211 and Harbor Side 1007 are located.

Defendant has not voted in many years. He is not a member of any club, church, or civic organization in Puerto Rico. In addition to the mentioned bank accounts in Venezuela, he only maintains accounts in New York and Washington.

### Diversity Jurisdiction

If the defendant challenges the plaintiffs' allegations of jurisdictional facts, the plaintiffs bear the burden of supporting the allegations with competent proof. *Thomson v. Gaskill*, 315 U.S. 442, 446, 62 S.Ct. 673, 675, 86 L.Ed. 951 (1942). Diversity is determined as of the time of the filing of the complaint. *Kidd v. Hilton of San Juan*, 251 F.Supp. 465, 468 (D.P.R.1966). 28 U.S.C. Sec. 1332 confers jurisdiction over suits "between citizens of different

states." To qualify for this provision, a person must be both a citizen of the United States and a citizen of a particular state. *Sadat v. Mertes*, 615 F.2d 1176, 1180 (7th Cir.1980). An American citizen domiciled abroad falls into an unusual category. He may not sue or be sued in federal court based on section 1332. *Van Der Schelling v. U.S. News & World Report*, 213 F.Supp. 765, 762 (D.C.Pa.1963).

The essential elements of domicile are residence coupled with the purpose of making the place of residence one's home. *State of Texas v. State of Florida*, 306 U.S. 398, 424, 59 S.Ct. 563, 575–76, 83 L.Ed. 817 (1939). "The very meaning of domicile is the technically pre-eminent headquarters that every person is compelled to have in order that certain rights and duties that may have been attached to it by the law may be determined." *Williamson v. Osenton*, 232 U.S. 619, 625, 34 S.Ct. 442, 443, 58 L.Ed. 758 (1914). A person may have only one domicile at a time and until a new one is acquired the presumption is that it continues until changed. *Mitchell v. United States*, 21 Wall. 350, 353, 88 U.S. 350, 353, 22 L.Ed. 584 (1874); *Hawes v. Club Ecuestre El Comandante*, 598 F.2d 698, 701 (1st Cir.1979). The place "where a person lives is taken to be his domicile until facts adduced establish the contrary." *Mitchell*, 88 U.S. at 352. Absence from a fixed home, even if for long periods, cannot alone cause a change in domicile. *Id.*, at 353.

To prove a change in domicile, the plaintiff must show that the defendant has both a "residence in a new domicile" and "the intention to remain there ... either without the other is insufficient." *Sun Printing & Publishing Asso. v. Edwards*, 194 U.S. 377, 24 S.Ct. 696, 48 L.Ed. 1027 (1903). Persons are domiciled in a state when they live there and "have no fixed and definite intent to return and make their home where they were formerly domiciled." *District of Columbia v. Murphy*, 314 U.S. 441, 455, 62 S.Ct. 303, 309, 86 L.Ed. 329 (1941).

To prevail in this action, the plaintiffs must show that at the time of filing of the

complaint, defendant had been residing in Puerto Rico, and considers Puerto Rico to be his home. For a change in domicile to occur, physical presence at a new dwelling place plus intention to remain there must concur. *Corns v. Inter-American University of Puerto Rico*, 217 F.Supp. 755, 756 (D.P.R.1963). It is not contested that defendant has been present in Puerto Rico for short stays between August and February of 1984. However, the defendant's intentions are sharply contested. The court must look for indicia of intentions once the physical fact of residence has been established. "A person's statement of intention, if believed by the court, is of course relevant. Other factors must also be considered." *Miller Dress Factory v. Douglas*, 385 F.Supp. 874, 877 (D.P.R.1974). The courts have looked at a variety of factors: withdrawing money and closing bank accounts; opening new bank accounts; giving up living quarters; selling belongings (i.e., car, furniture); membership in clubs and churches, and voting. *Kidd*, 251 F.Supp. at 467. Additional factors include: where taxes are paid and the local of close relations. *Miller Dress*, 385 F.Supp. at 877.

The defendant has sold his home in Venezuela and is currently renting a mooring space for his boat there. He admittedly owns two condominium apartments in Puerto Rico. Ownership of a house in another location does not alone change one's domicile. It has been held to be "insignificant" that a party owned a home in another state while living in a company-owned home in his domicile. *Unanue v. Caribbean Canneries*, 323 F.Supp. 63, 70 (D.Del. 1971).

In *O'Toole v. Arlington Trust Co.*, 681 F.2d 94 (1st Cir.1982), the First Circuit held the plaintiffs' domicile had not been changed to Florida, where they purchased a condominium and attempted to vote. Instead, their domicile remained in Massachusetts, where they rented an apartment, owned a car, and retained business investments. *Id.*, at 97, 98.

In *Kidd*, the court found that the defendant had acquired a new domicile. *Kidd*, 251 F.Supp. at 468. Like the party in *Kidd*, defendant has opened an account with a Puerto Rican bank, sold some furniture, and shipped most of his belongings to Puerto Rico or Washington. However, unlike the party in *Kidd*, he has not acquired social and business connections at his later residence. He has not joined any clubs or churches. The case at bar is also distinguishable from *Kidd* in that the defendant has retained most of his ties with Venezuela. He has not closed his bank accounts, he retains his car (registered and insured in Venezuela), he still rents moorage space in Venezuela and still has business investments and office space there.

The defendant's statements of his intent must be recognized as being self-serving and, therefore, of limited value. *State of Texas v. State of Florida*, 306 U.S. at 426, 59 S.Ct. at 576. Even so, in the defendant's sworn statement and in his deposition he firmly states that he views Venezuela as his true home, while Puerto Rico is merely an investment site and a possible location for a retirement residence in the future. In 1979 and 1984 he indicated a desire or intention to make Puerto Rico his home upon retirement. While indicative of the defendant's state of mind, it is not conclusive as to the issue of whether the defendant currently views Puerto Rico as his home.

### Conclusion

At the commencement of this action, the defendant has been a resident of Venezuela for nearly thirty years. Although retired, he still maintains investments and a business office in Venezuela. He has sold his former home, but has maintained some form of lodging in Venezuela.

Defendant's actions are consistent with those of a retired man, domiciled in Venezuela, taking care of investments in Puerto Rico and considering retiring here in the future. The plaintiff has not carried its burden of proving by a preponderance of

the evidence that the defendant has acquired a new domicile.

Although the defendant may have been present in Puerto Rico, the intention to make Puerto Rico his home is lacking. Therefore, there has been no change in domicile. Defendant's motion to dismiss for lack of diversity jurisdiction is hereby GRANTED.

IT IS SO ORDERED.